JOHN SLAWSON *vs.* ELISHA T. LORING.

An indorsement of a draft by a husband to his wife, and her subsequent indorsement of it with his assent to a third person, are sufficient to vest in the latter a valid title.

A draft in this form — " Office of the P. L. Manuf. Co., Hancock, Mich., June 5th 1861. E. T. L., agent. At four months sight, pay, &c., and charge the same to account of this company," signed " I. R. J., agent," and accepted by " E. T. L., agent," binds the acceptor personally.

CONTRACT against the acceptor of two drafts, the first of which was in form and appearance as follows, the written portion being here printed in Italics:

Slawson *v.* Loring.

No. 40     **Office of Portage Lake Manufacturing Company,**

Hancock, Mich., *June 5th* 1861.

## E. T. LORING, AGENT,

*39 State St., Boston.*

      *At Four Months*          sight, pay to the

order of       *I. H. Slawson*

      *Four Hundred*     ,            **Dollars,**

and charge the same to account of this company.

$400            *I. R. Jackson, Agt.*

(Written across the face of the draft,) " Accepted June 15, E. T. Loring, Agent." (Indorsed,) " Pay to order of Mary M. Slawson, I. H. Slawson. Pay to Dupee, Beck & Sayles or order, Mary M. Slawson. Without recourse to Dupee, Beck & Sayles."

The second draft was for $1034, dated the same day, and precisely similar in other respects to the first.

It was agreed in the superior court that the drafts were duly presented to and accepted by the defendant, as appears upon them, and that payment was refused at their maturity. It was also agreed, subject to the right of either party to object to the competency of the facts, that I. R. Jackson and others composed a firm doing business at Hancock, Michigan, under the name of the " Portage Lake Manufacturing Company," of which the defendant was not a member. Jackson was agent of this firm at Hancock, and the defendant was agent of the same firm at Boston, and these facts were known to the payee at the time the drafts were drawn. Mary M. Slawson, the second indorser, was the wife of I. H. Slawson, the payee, and at the time of her indorsements lived with her husband in Michigan, and there placed her name upon the drafts by his direction, she having no interest in them, and he delivered them to the plaintiff for a valuable consideration, the direction to pay to Dupee, Beck & Sayles being for the convenience of the plaintiff. The drafts were presented to the defendant for acceptance at the request of the plaintiff, after the indorsements thereon by Mary M. Slawson, the plaintiff knowing that she was the wife of I. H. Slawson, and that the defendant was the agent at Boston of the said company.

29 *

Upon these facts, judgment was rendered in the superior court for the defendant, and the plaintiff appealed to this court.

*C. B. Goodrich & I. J. Austin*, for the plaintiff.

*S. Bartlett & D. E. Ware*, for the defendant.

BIGELOW, C. J. The plaintiff shows a good title to the drafts. It is true that the payee, by his indorsement and delivery of them to his wife, vested the property in her; but they were choses in action, the possession and control of which he might at any time during coverture resume. This he did by procuring her indorsement thereon, taking them into his own hands again, and passing them over to the plaintiff. Her indorsement, having been made by his authority and assent, was sufficient to vest the title in her indorsee. *Stevens* v. *Beals*, 10 Cush. 291. *Allen* v. *Wilkins*, 3 Allen, 321.

The only other question arising on the agreed statement of facts is, whether the defendant is liable as acceptor of the drafts. This depends exclusively on the fair result of the inspection of the drafts themselves — that is, whether on the instruments as they appear, it can be reasonably inferred that the acceptor disclosed his principal, and that the intent was to bind the principal and not himself. Being negotiable paper, all evidence *dehors* the drafts is to be excluded. It is wholly immaterial, therefore, that the defendant was in fact the agent of the company named on the face on the drafts, that the plaintiff knew that he was so, and that the defendant had no personal interest in the company. *Fuller* v. *Hooper*, 3 Gray, 334, 341. *Bank of British North America* v. *Hooper*, 5 Gray, 567. *Draper* v. *Massachusetts Steam Heating Co. ante*, 338. The rule excluding all parol evidence to charge any person as principal, not disclosed on the face of a note or draft, rests on the principle that each person who takes negotiable paper makes a contract with the parties on the face of the instrument, and with no other person.

Taking the signature of the defendant as acceptor, written across the face of the drafts, by itself, without reference to other parts of the instruments, it is clear that it would bind him personally. It discloses no principal, nor is it in a form which would exclude the personal liability of the acceptor. It is

equivalent to this promise : " Having funds of the drawers in my hands, I hereby agree to pay the amount of the drafts at maturity." The addition of the word agent to his name is not sufficient to exempt a party from liability on such a contract. It is a mere *descriptio personæ*, designed to indicate the fund to which the money is to be charged, or the use to which it is to be appropriated. This is clear on the authorities. *Forster* v. *Fuller*, 6 Mass. 58. *Thacher* v. *Dinsmore*, 5 Mass. 299. *De Witt* v. *Walton*, 5 Selden, 571. *Seaver* v. *Coburn*, 10 Cush. 324. *Fiske* v. *Eldridge*, 12 Gray, . *Haverhill Ins. Co.* v. *Newhall*, 1 Allen, 130. *Mare* v. *Charles*, 5 El. &·Bl. 978.

We are then to look at other parts of the instruments to see whether there is anything to indicate that the acceptor signed as agent for a principal who by reasonable intendment can be held to have been disclosed to the purchaser of the drafts. The first and most obvious conclusion which is to be drawn from the form of the bills is, that the drawer signs his name as agent of the company named therein, and that they are intended as drafts, not of the agent personally on his own funds in the hands of the drawee, but as those of the principals acting through their agent on funds belonging to the company. This appears clearly from the fact that the bills bear date at the office of the company in Hancock, Michigan, and direct the drawee to charge the amount of them " to the account of this company," the .drawer signing his name after these words. No one can doubt that on bills thus drawn the agent fully discloses his principal, and that the drawer could not be personally chargeable thereon. So far as the liability of the drawer is concerned, the case is not unlike that of *Fuller* v. *Hooper*, already cited. This construction of the instruments declared on is not without its bearing on the liability of the drawee. It gives full effect to the forms of the bills, to the fact that they are drawn on blank printed forms manifestly prepared for the use of the company, and that they are dated at the office of the company in the · place where their business is chiefly carried on. These circumstances have reference to the capacity in which the bills were signed by the drawer. It is his language which they speak, and

they show his intent to disclose the principals for whom he acted as agent in making the drafts. So much, then, of the language of the instruments is appropriated and exhausted in qualifying the liability of the drawer. It is difficult to see how they can be again applied in giving an interpretation to the instrument which shall also absolve the drawee to whom they were addressed, on his separate and distinct contract as acceptor. They can have no meaning beyond that which they plainly import, namely, an order by the company through their agent to pay to the holder a certain amount of money. What then is left on the face of the drafts to show that the defendant is not liable as acceptor. Nothing, except the single circumstance that the address to him as drawee is printed in large capital letters at the top of the bills, between the date and the body of the instrument, with the addition thereto of the word " agent." This, certainly, does not necessarily or even *prima facie* indicate that he is the agent of the drawers. It is, to say the least, equally consistent with the idea that he is the agent of some third person not named on the face of the bill. Nor can we give any great effect to the fact that the defendant's name as drawee is printed as part of the blank used by the company. A draft or bill in like form might be used, if their course of business was to deal with him as the agent of some other person or company. We are unable to see, therefore, that there is anything on the face of the bills, which, fairly interpreted, discloses any principal for whom the defendant acted in accepting the bill, whereby he can be absolved from personal liability thereon.

But there is another and broader view of the contract into which the parties entered, which is strongly indicative of an intent by the defendant to be bound by his acceptance. The instruments declared on purport to be bills of exchange, having a drawer and acceptor. By putting their contract in such form, the intention of the parties must have been to issue paper which should be received by those who took it in the usual course of business, according to the legal and ordinary effect which such form imports, as giving to the holder the security of the names

of the parties. Otherwise, if they intended to bind one party only, it is reasonable to suppose the bills would have been drawn by the company on itself, in which case the direction and request to pay would have been on the company by its name, and not upon an individual described only as an agent. The argument urged in support of the defence would pervert the bills into a contract different from that which they import on their face. If they should be construed to be drafts by the company on itself, they would be in legal effect merely promissory notes on which the holder would have only the security of one name, which would be contrary to the intent and purport of the instruments. The early case of *Thomas* v. *Bishop*, 2 Stra. 955, and Rep. Temp. Hardw. 1, cited with approval by this court in *Taber* v. *Cannon*, 8 Met. 456, 460, is strikingly like the case at bar. It was the case of a draft drawn by a company addressed to their cashier, who was a servant in the employment of the company. It was accepted by him, and he was held personally liable on the draft. *Judgment for the plaintiff.*